## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

VINCENZO ENVER VALACHI                                    PLAINTIFF
ADC #099530A

v.                        No: 4:17-cv-00774 BRW-PSH

CHRISTOPHER ASHCRAFT, *et al.*                            DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge

Billy Roy Wilson. You may file written objections to all or part of this

Recommendation.  If you do so, those objections must: (1) specifically explain the

factual and/or legal basis for your objection, and (2) be received by the Clerk of this

Court within fourteen (14) days of this Recommendation.  By not objecting, you

may waive the right to appeal questions of fact.

## DISPOSITION

## I.  Introduction

Plaintiff Vincenzo Enver Valachi (a/k/a Michael Adams), an inmate confined

at the Arkansas Division of Correction's (ADC)[1] Varner Unit, filed this *pro se* action

---

[1] The Arkansas Department of Corrections recently reorganized, and the Arkansas
Division of Correction now operates Arkansas's prisons.  *See* Organizational Charts,
https://adc.arkansas.gov/organizational-chart.

pursuant to 42 U.S.C. § 1983, the American with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.,* as amended ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA") (Doc. No. 2). After Valachi filed an amended complaint (Doc. No. 4), the Court recommended dismissal of certain claims and defendants. *See* Doc. No. 6. The remaining defendants were subsequently served with process, *see* Doc. Nos. 7-14, and the Arkansas Department of Corrections and Dexter Payne were dismissed as defendants. *See* Doc. No. 17. Other defendants were dismissed based on Valachi's failure to exhaust administrative remedies. *See* Doc. Nos. 43 & 47. The remaining defendants are Construction Maintenance Coordinator Christopher Ashcraft,[2] Classifications Officer Meredith McConnell, and Coach Edward Lane (the "Defendants"). Valachi's claims are limited to the following:

1) that McConnell, in her official capacity, violated Valachi's civil rights and his rights under the ADA and the RA by denying him access to the prison's vocational (vo-tech) and job training programs because of his disability;

2) that Lane, in his official capacity, violated Valachi's civil rights and his rights under the ADA and the RA by failing to provide activities for mobility impaired individuals during holiday parties and events; and

---

[2] Valachi describes Ashcraft as the Assistant ADC Maintenance Supervisor.

3)  that Ashcraft violated Valachi's civil rights and his rights under the ADA and Rehab Act in his official capacity, as well as Valachi's civil rights in his individual capacity, by failing to build a track and handicapped toilet[3] in the prison yard.

Doc. Nos. 47 & 66.  Valachi's constitutional claims for money damages against defendants in their official capacities have been dismissed, but his claims for injunctive relief against defendants in their official capacities remain.  *See* Doc. Nos. 60 & 66.

Before the Court is a motion for summary judgment, brief in support, and statement of undisputed facts filed by the Defendants (Doc. Nos. 72-74), along with Valachi's responses, brief in support, statement of disputed material facts, and supporting declarations (Doc. Nos. 83-87).

For the reasons described herein, the undersigned recommends that the Defendants' motions for summary judgment be granted.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact

---

[3] Valachi's claim against Ashcraft originally addressed the prison's failure to provide a handicapped accessible toilet in the prison yard.  Valachi concedes in his deposition testimony that such a toilet has since been provided, and he has no remaining claims with respect to the lack of a toilet.  *See* Doc. No. 89-1 at 19.

and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes

that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  Facts

Valachi was convicted of aggravated robbery approximately 30 years ago and is serving a life sentence. *Deposition of Vincenzo Valachi Transcript Testimony,* Doc. No. 89-1 at 15.  Valachi has been housed at the Varner Unit for approximately 14 years. *Id.*  He is confined to a wheelchair. *Id.* at 30.

*Vocational Training*

In his amended complaint, Valachi alleges that classifications officer Meredith McConnell denied him the right to participate in vocational or "vo-tech" training, a federally funded program, by claiming that he is a security risk.  Doc. No. 4 at 8 & 12.  Valachi claims that McConnell "refused to find an alternative solution to provide vocational trade for mobility impaired individuals wishing to learn a vocational trade to improve their lifestyle." *Id.* at 8.

James Gibson, the Superintendent at the Arkansas Division of Correction's (ADC) Varner Unit, provided a declaration concerning the issues raised by Valachi in his complaint (Doc. No. 72-1).  According to Gibson, the Varner Unit offers certain vocational programs to inmates who are nearing their parole date.  Doc. No. 72-1 at 1.  To participate in the vocational program, an inmate must, at a minimum,

meet the following criteria: be Class I or II and have resided in general population housing for a minimum of 60 days; have received no major disciplinaries within the previous 60 days and no minor disciplinaries with the previous 30 days before enrollment; be able to perform the basic job skills and requirements; and be within 72 months of his projected release date (typically called a PE or TE date) and have enough time to complete the program. *Id*; *see also* ADC Vo-Tech Application (Doc. No. 72-2). Gibson states that these requirements apply to all inmates in the ADC, and that inmates who do not meet each requirement may not participate in the vocational program. Doc. No. 72-1 at 2. Gibson further explains that because Valachi is serving a life sentence, he is not eligible for release and does not have a PE or TE date. *Id.* Valachi is therefore not eligible to participate in the vocational program. *Id.* Gibson also states that Valachi's institutional file is marked with an escape risk notification because Valachi attempted to escape from the Cummins Unit in 1993. *Id.* Gibson explains that for security reasons, inmates who are serving life sentences as well as those who are identified as escape risks in their institutional files are not allowed outside the fence without the supervision of an armed guard. *Id.* All of the Varner Unit's vocational programs take place outside the fence in a separate building where there is not an armed guard present at all times. *Id.* Accordingly, inmates who are serving life sentences or who are identified as an escape risk may not participate in vocational programs at Varner. *Id.*

6

Valachi generally disagrees with the Varner's policy regarding prisoners with life sentences. Doc. No. 85 at 17-19. He believes that he may be granted clemency at some point and should therefore be allowed to participate in vocational training programs. *Id.* He also states that he qualifies for training under the federal programs that provide funds for these programs, but does not name the programs or provide any information about their eligibility requirements. Doc. No. 86 at 3-4. He believes the ADC could offer these programs on site so that those with life sentences could participate. *Id.* at 4-5. He also maintains there are armed guards at the vocational training locations. *Id.* at 4. Apart from the conclusory statement that he should be allowed to participate in these programs even though he is disabled, Valachi does not provide any facts to support his claim that he cannot participate in the programs due to his disability; rather, he argues that the prison's security concerns could be alleviated by having him take vocational classes at the prison on the inside of the fence. *See generally* Doc. No. 86 at 3-6.

*Holiday Activities*

Valachi alleges in his complaint (filed in November 2017) that defendant Coach Edward Lane had refused to provide special events for mobility impaired individuals at the Varner Unit for the past 12 years. Doc. No. 4 at 9 & 12. Valachi asserts that he asked Lane to provide certain activities for handicapped inmates at

these events, but Lane refused.  *Id.*; Doc. No. 89-1 at 38-47; Doc. No. 86 at 2-3 & 9-10.  In his deposition, Valachi testified:

> . . . [I]n 2015, I approached Coach Lane and asked him about doing special events for handicap people in wheelchairs, and he said, like what.  And so I told him, I said, well, you got a shuffleboard court right there.  You can have shuffleboard tournaments.  You can have free throw basketball tournaments where you give guys in wheelchairs ten shots, whoever makes the most wins and wins the $10, you know.
> . . . And he said, well, I'm not going to do nothing like that.  He said, ain't going to happen.

Doc. No. 89-1 at 39.  Valachi also testified that he was denied participation in the following activities:  horseshoes, the 60-yard dash, 40-yard dash, one-mile race, two-mile race, and shuffleboard.  *Id.* at 40.  He acknowledged that he could play horseshoes in his wheelchair, but he was unable to cross the grass to get to the horseshoe pits.  *Id.* at 40-41.  Valachi testified that Coach Lane never offered to have an inmate porter push him to the horseshoe pits, and he never asked Coach Lane to do so.  *Id.* at 46.

Superintendent Gibson described the holiday activities available to inmates at the Varner Unit in his declaration.  Doc. No. 72-1 at 2-4.  Gibson states that the Varner Unit's recreational staff hosts recreational tournaments for inmates that coincide with the following holidays:  Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day.  *Id.*  Winners of the games are awarded a small cash prize of $10-15.  *Id.*  Gibson explains that the types of tournaments held vary depending on the weather.  *Id.*  Valachi clarified in his response and in his

deposition testimony that his complaint only concerns the summer tournaments because he is able to participate in the games offered during the winter. Doc. No. 89-1 at 45; Doc. No. 86 at 7. The games offered during the summer months include various races, volleyball, handball, and horseshoes. Doc. No. 72-1 at 3.

In his declaration, Gibson explains that before a tournament is held, the recreational staff posts flyers in the barracks detailing what events are being held and how to sign up to participate. Doc. No. 72-1 at 3; Doc. No. 72-5 (examples of tournament flyers). To participate in one of the tournaments, an inmate must submit a request to either the recreational staff (Coach Lane or Coach Burnett) or one of the recreational porters. Doc. No. 72-1 at 3. The holiday flyers indicate that this request is a written "Request for Interview" which must be submitted by a certain date. Doc. No. 72-5. Information regarding how to sign up is printed clearly on each flyer. Doc. No. 72-1 at 3; Doc. No. 72-5. Some games require that an inmate hold a certain classification to participate. *Id.* As long as an inmate timely registers, that inmate is permitted to participate in any activity for which the inmate is otherwise eligible. Doc. No. 72-1 at 3. Valachi acknowledged in his deposition testimony that he never submitted a formal request to participate in the games offered at Varner Unit; he explained that he did not do so because the available games were not specifically designated for handicapped inmates. Doc. No. 89-1 at 44.

Gibson states in his declaration that four to seven inmate porters are assigned to the Varner Unit's recreational staff. Those porters aid the recreational staff by managing equipment, cleaning the yard and gym, helping organize and run holiday events, and aiding other inmates during recreational time. *Id.* at 3-4. Gibson says that had Valachi registered to play in one of the holiday tournaments, the porters could have helped him reach any part of the prison yard that does not have a paved path so that he could participate. *Id.* at 4.

Valachi submitted a declaration signed by inmate Marvin Humphrey. Doc. No. 87 at 1-2. Humphrey states that he witnessed Valachi talk to Coach Lane about his inability to participate in special games for handicapped individuals. *Id.* Humphrey states that he heard Lane tell Valachi to submit a list of events that would satisfy his request. *Id.* He says that when Valachi next approached Lane and asked about his request, Lane said that he would not honor that request and that there would never be any special events for handicapped individuals as long as he was the recreational supervisor. *Id.* Humphrey also states that he is a handicapped inmate who uses a rollator (a type of walker) to move around, and that he can testify

> as to how hard it is for myself to reach the horseshoe pit especially after it has rained and the ground is wet with pools of water and muddy and the ground is so soft that your wheel chair just sink in to the ground.

*Id.* at 2.

Valachi also submitted a declaration by Rodney Jones, another handicapped inmate housed with him at the Varner Unit.  Doc. No. 87 at 3-4.  Jones states that he witnessed Valachi ask Coach Lane about the exercise track and about not having holiday special events.  *Id.*  Regarding the horseshoe pit, Jones states that he uses a rollator to get around and cannot "reach the horseshoe pit without some issues due to the fact that ground is most of time wet and soft from the rain and in most places water forms in puddles of small pools of muddy dirty water."  *Id.*  He also disputes that porters would be available to help other inmates get around.  *Id.*

Defendants submitted the declaration of Michael Richardson, a major with the ADC stationed at the Varner Unit.  Doc. No. 72-6.  Richardson states that he is personally familiar with Valachi.  *Id.*  He states that upon learning that Valachi claimed he could not reach the horseshoe pits in the Varner Unit's recreational yard, he supervised an assessment of the recreational yard with a wheelchair from the ADC's medical department.  *Id.*  For the assessment, Richardson had an individual approximately 5'7'' tall and 215 pounds sit in the wheelchair, and an individual with similar build was able to push the individual in the wheelchair from the entrance of the recreational yard to the horseshoe pit and back to the entrance without issue.  *Id.*  Valachi objects to Richardson's assessment, and also maintains that only medically trained orderlies are able to assist handicapped inmates.  *Id.; see also* Doc. No. 86 at 8.

*Recreational Track*

Valachi alleges that Construction Maintenance Coordinator Christopher Ashcraft refused to build an exercise track in the prison yard for mobility impaired inmates unless ordered to do so by a court.[4]  Doc. No. 4 at 3, 7 & 11-12.

Both Gibson and Gail Mainard, the ADC's Assistant Director of Construction and Maintenance, provided declarations concerning the exercise yard at the Varner Unit.  Doc. No. 72-1 at 4; Doc. No. 72-7.  Both explain that the Varner Unit has two recreational yards.  Doc. No. 72-1 at 4; Doc. No. 72-7 at 1.  One yard has a basketball court, a handball court, and horseshoe pits.  Doc. No. 72-1 at 4.  The courts are paved, and the horseshoes are located in a grassy area.  *Id*.  The second yard is where inmates play softball.  *Id.*

A large paved blacktop area separates the two yards.  Doc. No. 72-1 at 4; Doc. No. 72-7 at 2.  According to Mainard, the dimensions of this area are approximately 144 feet long by 129 feet wide, making the square footage of the area approximately 18,000 square feet.  Doc. No. 72-7 at 2.  The paved area has a compactor on it;

---

[4] In his amended complaint, Valachi also alleges that Ashcraft threatened to retaliate against him if he did not discontinue his filings and demands regarding the exercise track.  Doc. No. 4 at 7.  These allegations were not grieved, and were therefore dismissed by the Court's prior ruling regarding the exhaustion of administrative remedies.  *See* Doc. No. 43 at 8-11 (describing grievances concerning the exercise track) & Doc. No. 47 (adopting Doc. No. 43).

Mainard states that the square footage of the paved area after subtracting the area of the compactor and other semi-permanent items is 14,000 square feet.  *Id.*

Gibson states that during yard time, inmates must be in one of the yards and are not generally allowed to spend their time on the paved blacktop area.  Doc. No. 72-1 at 4.  Valachi, however, is allowed to spend his yard time on the paved blacktop area because of his disabilities.  *Id.*; Doc. No. 86 at 14.  Gibson explains that if yard call is on the yard with the basketball court, Valachi may either take his recreational time in that yard or on the paved blacktop area.  Doc. No. 72-1 at 4.  If yard call is on the yard with the softball field, Valachi may exercise on the paved blacktop area or the paved walkway described below.  *Id.*

Gibson states that the softball yard has a paved walkway that runs approximately halfway around the perimeter of the softball yard.  *Id.*  Valachi disputes this; he claims that the walkway only extends from the front gate to the toilet, which is less than a third of the way around the softball yard.  Doc. No. 84 at 3; Doc. No. 86 at 10.  Mainard states that the concrete walkway runs from the entrance gate of the yard to an outside restroom and is 250 feet long and 5 feet wide.  Doc. No. 72-7 at 1.  She also states that it is wide enough for an inmate in a wheelchair to use it and turn around on it.  *Id.* at 2.  According to Mainard, the Americans with Disabilities Act requires a walkway to be a minimum of 3 feet wide.  *Id.* at 1.  She states that building this walkway cost approximately $6,000.  *Id.* at 2.

She claims that due to budgetary restraints, the ADC could not complete the walkway all around the yard, and therefore split the walking project into phases based on funding allocations.  *Id.*  The estimated cost to complete the walkway is $14,000.  *Id.*  Mainard says that it would place an undue burden on the ADC to complete the project ahead of schedule.  *Id.*  She states that the ADC hopes to begin the second phase of the project within the year.  *Id.*

According to Mainard, project authorizations are decisions made by the ADC Management Team, which consists of the ADC's Director, the ADC's Chief Deputy Director, two Deputy Directors, and three Assistant Directors.  Doc. No. 72-7 at 2-3.  Defendant Ashcraft's title is "Construction Maintenance Coordinator," and he manages projects that the Management Team approves and orders to be completed.  *Id.* at 3.  He is not a member of the Management Team and has no authority to determine which projects are undertaken or funded.  *Id.*

Valachi does not describe any particular injury he has suffered as a result of the prison's failure to build a longer exercise track.  In his deposition, Valachi acknowledged he suffered no physical injuries as a result of the prison's failure to do so.  Doc. No. 89-1 at 63.

## IV.  Analysis

### A.    Constitutional Claims

Valachi alleges that the Defendants violated his civil rights.  Because he sues Coach Lane and Classification Officer McConnell in their official capacities only, only his constitutional claims for injunctive relief against these defendants survive. *See* Doc. Nos. 66.  Valachi sues Ashcraft in both his individual and official capacities; accordingly, his constitutional claims for both money damages and injunctive relief against Ashcraft remain.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the conduct of a defendant acting under color of state law deprived him of a right, privilege, or immunity secured by the United States Constitution or by federal law. 42 U.S.C. § 1983.  Valachi generally asserts that Lane and Ashcraft violated his Eighth and Fourteenth Amendment rights.  He does not specify which rights he believes McConnell violated.  In any case, his claims against any defendant for violation of his Eighth or Fourteenth Amendment rights fail.

### *Eighth Amendment*

In order to support an Eighth Amendment violation, a plaintiff must prove the existence of objectively harsh conditions of confinement, together with a subjectively culpable state of mind by prison officials in condoning or creating the conditions. *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993).  The "defendant's

conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the 'minimal civilized measure of life's necessities.' . . . The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels v. Vincenz,* 382 F.3d 870, 875 (8th Cir. 2004) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 342 (1981) and *Estelle v. Gamble*, 429 U.S. 97, 104 (1977)). "[D]iscomfort compelled by conditions of confinement, without more, does not violate the amendment." *Smith v. Coughlin*, 748 F.2d 783, 787 (2nd Cir. 1984) (quoting *Jackson v. Meachum*, 699 F.2d 578, 581 (1st Cir. 1983)).

Valachi has not alleged facts showing that he was denied life's necessities such as food, shelter, and water or that he has suffered the unnecessary or wanton infliction of pain. His assertions against McConnell relating to his inability to participate in vocational training do not support an Eighth Amendment claim. *See Wishon v. Gammon*, 978 F.2d 446, 450 (8th Cir. 1992) ("Prisoners have no constitutional right to educational or vocational opportunities during incarceration.").

Further, with respect to his claims against Lane and Ashcraft regarding the recreational activities and the exercise track, Valachi has not established that he is prevented from engaging in physical activity, or that he has suffered any injury, because he did not have a sufficient amount of exercise space. He just desires a

longer exercise track and the ability to participate in certain recreational activities where a cash prize is awarded. This evidence simply does not support an Eighth Amendment violation. *See e.g., Wishon v. Gammon*, 978 F.2d at 449 ("Lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened.").

Finally, even if Valachi had shown that he was unable to exercise on the paved areas that are available to him, there is no evidence that Ashcraft is personally responsible for the prison's failure to complete the exercise track at the Varner Unit. According to Mainard's declaration, that decision is controlled by a management committee on which Ashcraft does not serve. *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted).

For these reasons, Valachi's Eighth Amendment claims against the Defendants fail and should be dismissed with prejudice.

*Fourteenth Amendment*

The Court does not construe Valachi's complaint as stating a separate Fourteenth Amendment claim. Valachi does not specifically describe in his complaint why he believes his Fourteenth Amendment rights were violated, and he may have referred to the Fourteenth Amendment because the Eighth Amendment is

applicable to the states through the Fourteenth Amendment. *See Robinson v. California,* 370 U.S. 660 (1962). Additionally, Valachi does not address any Fourteenth Amendment claims in his responsive pleadings. Nevertheless, for the purpose of this Recommendation, the Court will presume that Valachi intended to raise a Fourteenth Amendment equal protection claim. In considering this issue, the Court finds that Valachi fails to state a *prima facie* case that his equal protection rights were violated.

An inmate bringing an equal protection claim must show intentional or purposeful discrimination. *Klinger v. Dep't. of Corr.,* 31 F.3d 727, 733 (8th Cir. 1994). "The heart of an equal protection claim is that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relationship to any legitimate penal interest." *Weiler v. Purkett,* 137 F.3d 1047, 1051 (8th Cir. 1998) (citing *Timm v. Gunter,* 917 F.2d 1093, 1103 (8th Cir. 1990)).

Valachi does not claim to be a member of a protected class. The disabled do not constitute a "suspect class" for purposes of equal protection analysis. *See, e.g., More v. Farrier,* 984 F.2d 269, 271 (8th Cir.), *cert. denied,* 510 U.S. 819 (1993) (physically disabled not suspect class). Further, Valachi does not allege that his fundamental rights were violated.[5] As described above, he does not allege that he

---

[5] Fundamental rights are those expressly mentioned in the Constitution or those rights implicitly protected by the Constitution such as the right to privacy, *Griswold v. Connecticut*, 381 U.S. 479 (1965), the right to vote, *Harper v. Virginia Board of*

was provided no opportunity to exercise. Additionally, there is no fundamental right to vocational training or participation in games for a cash prize. Accordingly, Valachi must allege sufficient facts to state an equal protection claim as a class of one. A class-of-one plaintiff must allege that he or she was "'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *See Nolan v. Thompson,* 521 F.3d 989 (8th Cir. 2008) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

A class-of-one plaintiff must therefore "provide a specific and detailed account of the nature of the preferred treatment of the favored class," especially when the state actors exercise broad discretion to balance a number of legitimate considerations. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214-15 (10th Cir. 2004). Valachi does not specifically identify any inmates similarly situated to him who were able or allowed to participate in programs or events that were denied to him. Accordingly, Valachi fails to state a Fourteenth Amendment equal protection claim, and any such claim should be dismissed with prejudice.

---

*Education*, 383 U.S. 663 (1966), the right to travel interstate, *Shapiro v. Thompson*, 394 U.S. 618 (1969), and the right to marry, *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015).

### B.    ADA & RA Claims

Valachi sues the Defendants under Title II[6] of the ADA and section 504 the RA.  The Court considers Valachi's ADA and RA claims together because the two laws are "'similar in substance' and, with the exception of the RA's federal funding requirement, 'cases interpreting either are applicable and interchangeable' for analytical purposes."  *Bahl v. Cty. of Ramsey*, 695 F.3d 778, 783 (8th Cir. 2012) (quoting *Randolph v. Rodgers,* 170 F.3d 850, 858 (8th Cir. 1999)).

Section 504 of the RA prohibits discrimination on the basis of handicap in programs receiving federal financial assistance.  29 U.S.C. § 794(a).  It provides in relevant part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a). To establish a prima facie case of disability discrimination under Section 504, a plaintiff must prove that: (1) he is a qualified individual with a disability; (2) he was

---

[6] The ADA is divided into three titles:  Title I applies to discrimination in employment, 42 U.S.C. §§ 12111-12117; Title II applies to discrimination in public services, 42 U.S.C. §§ 12131-12165; and Title III applies to discrimination in public accommodations, 42 U.S.C. § 12181-12189.  "State prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 210 (1998)) (citing 42 U.S.C. § 12131(1)(B)).

denied the benefits of a program or activity of a public entity receiving federal funds;[7] and (3) he was discriminated against on the basis of his disability. *M.P. v. Independent School District No. 721,* 326 F.3d 975, 981–82 (8th Cir. 2003) (citing *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.,* 178 F.3d 968, 971 (8th Cir. 1999)).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.   A failure to accommodate claim under Title II is based on "the failure to reasonably accommodate the disabled individual's limitations." *Peebles v. Potter*, 354 F.3d 761, 767 (8th Cir. 2004).  The regulation requiring public entities to provide accommodations to persons with disability states:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7).  Pursuant to this regulation, accommodation is only required when "necessary to avoid discrimination on the basis of disability," and that any accommodation must be reasonable. *See Sak v. City of Aurelia, Iowa*, 832 F.

---

[7] Defendants do not contest that the RA is applicable to them as employees of the Arkansas Division of Correction, indicating that the ADC receives federal funding.

Supp. 2d 1026, 1040 (N.D. Iowa 2011).  Additionally, the defendants may raise as

an affirmative defense that the requested accommodation of the plaintiff's disability

would constitute an undue burden, requiring "a fundamental alteration in the nature

of a service, program, or activity or in undue financial or administrative burdens."

*See* 28 C.F.R. § 35.150(a)(3).

To state a claim under Title II of the ADA or the RA, Valachi must be a

"qualified individual with a disability."  The ADA defines "disability" as "(A) a

physical . . . impairment that substantially limits one or more major life activities . .

. (B) a record of such an impairment; or (C) being regarded as having such an

impairment."  42 U.S.C. § 12102(1)(A)–(C).[8]  A "qualified individual with a

disability" is "an individual with a disability who, with or without reasonable

modifications to rules, policies, or practices, the removal of architectural,

communication, or transportation barriers, or the provision of auxiliary aids and

services, meets the essential eligibility requirements for the receipt of services or the

participation in programs or activities provided by a public entity."  42 U.S.C. §

12131(2).

Defendants concede that Valachi has a disability.  Doc. No. 73 at 19.

Accordingly, the Court must determine whether Valachi was a *qualified* individual

---

[8] *See also* 29 U.S.C. § 705 (defining "individual with a disability" as "any individual [that] has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment).

who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity by reason of his disability, or otherwise subjected to discrimination by such entity. The Court analyzes Valachi's claims as to each defendant below.

*McConnell – Vocational Training*

Defendants argue that McConnell did not violate the ADA or RA because Valachi was not qualified to participate in the prison's vocational training program. Defendants are correct. A qualified individual with a disability is defined as an individual who "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The evidence in this case establishes that Valachi was not qualified to participate in a vo-tech program because he is serving a life sentence and has been labeled an escape risk, not because of his disability.

To participate in the ADC's vo-tech program, an inmate must be within 72 months of his projected release date; as an inmate serving a life sentence, Valachi has no projected release date. Additionally, according to Superintendent Gibson, the Varner Unit's vocational training takes place in a separate building outside the unit's fence with no armed guard present. Inmates who have been labeled an escape risk, such as Valachi, are not allowed to be outside the fence with no armed guard present. While Valachi disagrees with the ADC's policy prohibiting those with life sentences

or who are labeled escape risks from participating in vo-tech programs, he cannot show that he was denied participation by reason of his disability. In sum, his inability to participate in vocational training is completely unrelated to his disability. Accordingly, McConnell is entitled to summary judgment on his claim that she violated his rights under the ADA and/or RA by not allowing him to participate in vocational training.

*Lane – Holiday Activities*

Defendants also argue that Valachi was not qualified to participate in holiday activities because he never submitted a formal request to participate. The Defendants submitted copies of flyers announcing the holiday activities and basic requirements for participation. Doc. No. 72-5. Those flyers require an inmate to submit a "Request for Interview" to Coach Lane or one of the recreational porters in order to be allowed to participate. *Id.* Valachi concedes he never submitted such a request, and maintains that he did not do so because there were no games offered in which he could physically participate. He also argues that his verbal request to Lane to provide different games more suitable for handicapped individuals satisfies the required "Request for Interview."

The Court disagrees that Valachi's verbal statements to Lane comply with the requirements for eligibility. The requirements for participation are clearly stated. Valachi was required to submit a "Request for Interview" and did not do so. He

assuredly is aware of the requirement because he participates in winter holiday activities. Additionally, Valachi does not assert that he was prevented from submitting the appropriate request. He cannot claim he was denied participation in summer holiday activities because of his disability when the undisputed evidence establishes that he was not eligible because he did not comply with the rules for participation.[9] Coach Lane is entitled to summary judgment in his favor.

*Ashcraft – Exercise Track*

Ashcraft is also entitled to summary judgment on Valachi's ADA and RA claims regarding the exercise track. Valachi does not allege, let alone provide any evidence, that he is unable to exercise on the paved areas provided at the Varner Unit. The exercise track is 250 feet long and 5 feet wide, is wide enough for an inmate in a wheelchair to use and turn around on, and meets the width requirements of the Americans with Disabilities Act. Additionally, Valachi is provided access to a 14,000 square foot paved area for exercise. Accordingly, he has not been denied

---

[9] The parties dispute whether Valachi could participate in horseshoes because of his difficulty rolling his wheelchair to the horseshoe pits. This dispute is not material to the Court's finding in this matter. Valachi's lack of eligibility was unrelated to any inability to access the horseshoe pits.

Nevertheless, the Defendants provided evidence that an inmate porter could help Valachi reach the horseshoe pits, which is a reasonable accommodation. The ADA and RA require that a reasonable accommodation be made, not an accommodation of the plaintiff's choosing. *See e.g., Cade v. Williams,* 2014 WL 5529743 (E.D. Ark. 2014) ([T]he ADA requires prisons to give disabled inmates with 'reasonable accommodations,' but not necessarily the specific accommodations sought by the prisoner").

an opportunity to exercise based on his disability. Furthermore, as discussed above, Ashcraft does not have the authority to order that the exercise track at Varner be completed. Valachi's ADA and RA claims against Ashcraft should be dismissed.

## V.  Conclusion

For the reasons stated herein, the undersigned recommends that the Defendants' motion for summary judgment (Doc. No. 72) be granted, and Valachi's claims against the Defendants be dismissed with prejudice.

SO RECOMMENDED this 20th day of April, 2020.


_____
UNITED STATES MAGISTRATE JUDGE